UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | **Crim. No. 1:12-cr-266-01, -03 (RWR)** |
| | ) | |
| **SERGIO GONZALEZ-BENCOMO** | ) | |
| **a.k.a. "Juan Manuel Rivas"** | ) | |
| **a.k.a. "Mane"** | ) | |
| **a.k.a. "Manny"** | ) | |
| **a.k.a. "Cuba" and** | ) | |
| | ) | |
| **ORAL GEORGE THOMPSON,** | ) | |
| **a.k.a. "Chad,"** | ) | |
| | ) | |
| **Defendants.** | ) | |

**GOVERNMENT'S MOTION TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

## I. Introduction

The United States, by and through its attorney the United States Department of Justice, Narcotic and Dangerous Drug Section, hereby respectfully moves this Court to continue to exclude time from the calculation of when this matter must be brought to trial for defendants Oral George Thompson (hereinafter, "defendant Thompson") and Sergio Gonzalez-Bencomo (hereinafter, "defendant Bencomo") under the Speedy Trial Act, pursuant to 18 U.S.C. § 3161. As set forth herein, the Speedy Trial Act specifically authorizes the Court to (1) exclude any period of delay resulting from a continuance of the trial date granted for the ends of justice (a) because of the complexity of the case, *see* 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii), or (b) to ensure the parties the reasonable time necessary for effective preparation, *see* 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(iv); (2) exclude any period of delay, not to exceed one year, where the government has made an official request for foreign evidence, *see* 18 U.S.C. § 3161(h)(8);

and (3) exclude a reasonable period of delay, when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted, *see* 18 U.S.C. § 3161(h)(6).

Defendant Thompson opposes the instant motion. For the reasons discussed below, at this time, counsel for defendant Bencomo has been unable to meet and consult with his client to determine his client's views regarding the Government's instant motion. In support of this motion to exclude time under the Speedy Trial Act, the Government states the following:

## II. Procedural Background

Defendants Thompson and Bencomo, co-defendant Dwight Warren Knowles, a.k.a. "Arizona" (hereinafter, "co-defendant Knowles"), and two other co-defendants, were indicted in criminal case number 12-cr-266 (RWR) on December 12, 2012, by a federal grand jury in the District of Columbia. The indictment charged all five defendants with conspiring to distribute, and possess with intent to distribute, five kilograms or more of cocaine on board an aircraft owned by a United States citizen and registered in the United States, and aiding and abetting, in violation of 21 U.S.C. §§ 959(b), 960 and 963, and 18 U.S.C. § 2. The Indictment also included forfeiture allegations naming all five defendants. On December 12, 2012, Magistrate Judge John Facciola, United States Magistrate Judge for the District of Columbia, ordered the issuance of warrants for the arrest of all five defendants on the charges in the Indictment.

On February 26, 2013 and October 21, 2013, pursuant to an extradition treaty with Colombia, the United States submitted provisional arrest requests to Colombia seeking the arrests of defendant Bencomo and co-defendant Knowles, respectively. Defendant Bencomo and co-defendant Knowles were arrested in Colombia pursuant to those requests on March 26, 2013,

and November 6, 2013, respectively, and the United States submitted to the Government of Colombia formal extradition documents within 60 days of their arrests. Pursuant to that formal extradition request, defendant Bencomo was extradited to the United States on May 8, 2014. However, due to ongoing health issues requiring his quarantine within the medical unit at D.C. Jail, defendant Bencomo has not yet been arraigned in this Court. The formal extradition request for co-defendant Knowles is currently pending with the Supreme Court of Colombia, and the Government expects he will arrive in the United States between October and December 2014.

On March 28, 2014, defendant Thompson was extradited from Colombia to the United States and transported to this Court for his initial appearance pursuant to the charge in this case. Since that date, as discussed further below, the Government has produced, and continues to produce on a rolling basis, voluminous discovery in this case. During defendant Thompson's initial status hearing on April 7, 2014, the Government orally moved the Court to exclude time under the Speedy Trial Act to permit the parties to review the evidence in the case and to conduct plea negotiations. The Court granted the oral motion and excluded time until defendant Thompson's next status hearing on May 7, 2014. On that date, the Court again ruled that the time until the next status hearing, scheduled for May 21, 2014, would be excluded in the interests of justice. At this time, for the reasons stated below, the government seeks to continue to exclude time under the Speedy Trial Act, and delay scheduling a trial date, for defendants Thompson and Bencomo.

## III. Factual Background

Defendants Thompson and Bencomo, and their co-defendants are members of a high-level drug transportation network responsible for transporting large quantities of cocaine on

board aircraft registered in the United States. As a result of email communications obtained pursuant to federal search warrants in this investigation, lawful wiretaps in Colombia and the Bahamas, information from confidential sources, consensually-recorded conversations, and documents and photographs provided to the government by Bahamian, Haitian and Colombian law enforcement authorities, the Government learned that between May 2011 and December 2012, defendant Thompson conspired with his co-defendants and others to transport ton-quantities of cocaine on-board various United States-owned and -registered aircraft. The various aircraft were located in Canada, the United States, the Bahamas, and elsewhere and were intended to be flown to the Colombia-Venezuela border, where large quantities of cocaine would be loaded onto the aircraft for transportation. For their roles in arranging the acquisition and use of the aircraft, defendant Thompson and his co-defendants were to be paid hundreds of thousands of dollars in fees in this illicit scheme.

In particular, as early as mid-2011, defendant Thompson negotiated with several co-conspirators, including co-defendant Knowles, to acquire various aircraft, including a United States-registered Beechcraft 1900 aircraft bearing the tail number N157PA (hereinafter, "the N157PA aircraft") and other United States-registered aircraft, for use in transporting ton-quantities of cocaine. During numerous intercepted telephone calls and conversations with co-conspirators and others, defendant Thompson discussed the collection and payment of money to be used to acquire the aircraft, to pay for fuel for the aircraft, and to pay for travel expenses for pilots and other aircraft brokers. Defendant Thompson also emphasized to co-conspirators that the individuals in charge of particular aircraft, including the N157PA aircraft, could be trusted because the aircraft was controlled by his (defendant Thompson's) close associate co-defendant

Knowles and that the aircraft would be flown by co-defendant Knowles' nephew, co-defendant Dario Davis, a United States-licensed pilot. During many of these intercepted calls, as confirmed by confidential sources, defendant Thompson discussed the timing and logistics of flights to and from the Venezuela-Colombia border and the coordination with cocaine sources-of-supply who had agreed to pay the owners and users of the aircraft and pilots for their transportation services.

Additionally, after the May 24, 2012, seizure of the N157PA aircraft in Haiti and the arrest of co-defendant Davis and another co-defendant in Haiti for unauthorized use of an aircraft, defendant Thompson personally coordinated the attempts to secure the release of the aircraft and the release of co-defendant Davis so that the aircraft, with co-defendant Davis as pilot, could be used to continue a drug-transportation flight. In furtherance of those efforts, Defendant Thompson's discussed arranging for bribery payments to be made to Haitian government officials in an attempt to secure the release of the N157PA aircraft and co-defendant Davis.

## IV. Legal Analysis

### A. Tolling of the Speedy Trial Time Period Should Be Continued To Further the Ends Of Justice Because Of The Complexity Of The Case And To Ensure Effective Preparation.

#### 1. Complexity of the Case Basis (18 U.S.C. § 3161(h)(7)(B)(ii))

The Speedy Trial Act authorizes the Court to effectively toll the seventy-day trial period for any period of time by granting a "continuance on the basis of [the Court's] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In determining whether to grant a continuance, the Court must consider, among other factors:

> [w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits [prescribed by the statute].

18 U.S.C. § 3161(h)(7)(B)(ii).

A delay in scheduling a trial in this case would serve the ends of justice because of the complex nature of the prosecution and the discovery process. The indicted case alleges an international cocaine transportation conspiracy involving five defendants, but stems from a broader investigation that has also generated additional evidence relating to defendant Thompson's and his co-defendants' drug trafficking activities.

As such, the discovery provided to date, and to be provided, to defendants Thompson and Bencomo is comprised of a significant volume of audio recordings from foreign judicialized wiretaps, consisting of a total of approximately 27,329 wiretap calls and 655 text messages[1], approximately 7,000 pages of pen-link documents providing call information for each wiretapped call, as well as approximately 1,200 pages of draft transcripts/translations prepared for selected calls (the transcripts are not yet certified for trial). Many more pages of draft transcripts/translations will be prepared in the next few months. Unlike the primary evidence against defendant Thompson's and defendant Bencomo's two co-defendants who were expelled to the United States in 2013 and who primarily communicated in English, the majority of the communications of defendants Thompson and Bencomo are in foreign languages (Spanish and Jamaican Patois). Of the 27,329 total calls produced to date, approximately 18,803 of those calls

[1] That number of wiretap recordings does not include the wiretap recordings requested by the United States via MLAT to the Government of the Bahamas in this case. That MLAT request is pending processing by Bahamian law enforcement at this time, and is discussed further in Section IV. B., below.

are conversations of defendant Thompson intercepted over defendant Thompson's telephone in Colombia during the time period of the charged conspiracy in this case. Approximately 40 percent of those intercepted calls over Defendant Thompson's telephone are in Spanish, approximately 35 percent of those calls are in Jamaican Patois, with the remaining approximately 25 percent of the calls in English. Due to the limited availability of Jamaican Patois translators, the government has experienced significant delays in reviewing and translating those calls, all of which involve defendant Thompson. In January 2014, the Government learned that the translation contractors used by the Criminal Division did not have any certified Jamaican Patois translators. Accordingly, in anticipation of the extradition of defendant Thompson to the United States, in January 2014, at the request of the undersigned prosecutor, a Justice Department translation specialist directed Government-approved translation contractors to apply to certify at least one Jamaican Patois translator for use in this case. At this time, the contractors have submitted the security packages for four Jamaican Patois translators for Justice Department approval. Those security clearances are pending.

The courts have made findings of complexity and resulting exclusions of time based on the presence of a large amount of evidence gathered by means of audio recordings, including that which is in foreign languages. The production and review of such evidence, particularly where those recordings are in one or more foreign languages, as is the case here, often takes a substantial amount of time, justifying the exclusion of such time from the Speedy Trial Act calculation. In *United States v. Parga-Rivas*, 689 F.Supp. 2d 25 (D.D.C. 2009) (Collyer, J.), the Court considered the defendant's motion to dismiss the indictment on speedy trial grounds. In that case, the defendant, a Colombian national, had been charged by indictment in 2007 and then

by superseding indictment in 2008, with six other Colombians, with conspiring over a three-year period to manufacture and distribute cocaine and heroin, knowing that the drugs would be unlawfully imported into the United States. Following the defendant's extradition, this Court conducted a series of pre-trial status conferences, suspending the Speedy Trial Act between each in the interest of justice. After several status conferences and the concomitant speedy trial suspensions, the defendant filed a motion to dismiss the indictment on speedy trial grounds. His motion was denied. Among other bases, this Court reasoned that the complexity of the case tolled the speedy trial provisions, stating:

> The evidence in this case is in one or more foreign languages and both written and oral (wiretapped) evidence must be translated into English before it can be of use to either the defense or the prosecution. Witnesses and other pieces of evidence must be brought to the United States for trial, which will require significant international arrangements. It is entirely unreasonable to expect defense counsel to absorb the evidence, share it with his client, consider it so as to provide effective advice, and then determine with Mr. Parga-Rivas how they want to proceed all within seventy days. It is entirely unreasonable, in fact, to expect the Government to produce fully translated copies of the extensive evidence within seventy days for the defense to even begin its consideration and evaluation. This conclusion is within the normal precedent for application of this provision of the Speedy Trial Act. *See United States v. Brooks,* 697 F.2d 517 (3rd Cir.1982) (9 defendants and 4 counts made the case complex); *United States v. Al-Arian,* 267 F.Supp.2d 1258 (M.D.Fla. 2003) (19 months continuance based on 21,000 hours of recorded conversations in Arabic, hundreds of boxes of commentary evidence, and voluminous foreign law enforcement materials).

*Parga-Rivas*, 689 F.Supp.2d at 28. *See also United States v. Archbold-Manner*, 577 F.Supp. 2d 291 (D.D.C. 2008) (Lamberth, C.J) (denying the defendant's motion to rescind the declaration of excludable time under the Speedy Trial Act, and continuing the trial date in the interests of justice and on the basis that the "case involve[d] extensive wiretap evidence that must be transcribed and translated from Spanish and Patois into English" "[i]n order for the defendants to

have a full and fair opportunity to review this evidence"); *United States v. Butz*, 982 F.2d 1378, 1381 (9th Cir.), *cert. denied*, 510 U.S. 891 (1993) (exclusion of time justified in part because evidence of charged drug conspiracy was in form of "hundreds of hours" of conversations intercepted pursuant to Title III wiretap); *United States v. DiTommaso*, 817 F.2d 201, 210 (2d Cir. 1987) (multi-defendant international drug smuggling and money laundering case involving "hundreds of reels of [audio]tapes in Spanish, English and Italian," with witnesses scattered throughout several countries, found sufficiently complex to justify exclusion of time under § 3161(h)(8)(A) (precursor provision to the current provision at § 3161(h)(7)(B)(ii)); *United States v. Kamer*, 781 F.2d 1390 (9th Cir.), *cert. denied*, 479 U.S. 819 (1986) (concluding that an "ends of justice" continuance for additional trial preparation was supported by a complex case that had "numerous overseas documents, most of which [were] in the Dutch language," and many foreign witnesses).

The government respectfully submits that the ends of justice would be served by waiting to schedule a trial date and continuing to exclude time under the Speedy Trial Act, and that the "ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). *See also United States v. Ambrosio*, 898 F. Supp. 177, 192 (S.D.N.Y. 1995) (ends of justice exclusion justified in "a 17-defendant, tri-lingual case involving copious amounts of discovery" where the judge "granted several continuances, both at the government's and the defendants' requests, to provide the parties enough time to review discovery, consider plea agreements, and submit motions, all to serve the ends of justice"); *United States v. Kamer*, 781 F.2d 1380, 1389 (9th Cir.), *cert. denied*, 479 U.S. 819 (1986) (concluding that an "ends of justice" continuance for additional trial preparation was

supported by a complex case that had numerous overseas documents, most of which were in the Dutch language, and many foreign witnesses); *United States v. Brooks*, 697 F.2d 517, 521-22 (3d Cir. 1982), *cert. denied*, 460 U.S. 1073 (1983) (affirming district court's finding that ends of justice served by granting continuance in a complex case that alleged a drug manufacturing and distribution conspiracy involving nine people, with four counts of substantive drug offenses involving various members of conspiracy, where not all defendants had secured counsel, and where discovery had not been completed at time continuance was granted).

**2. Reasonable Time for Effective Preparation (18 U.S.C. § 3161(h)(7)(B)(iv))**

Additionally, the Government seeks a continuation of the case and tolling of the speedy trial time pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(iv). That is, in weighing whether a continuance serves the ends of justice, the Court must also consider the following:

> [w]hether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), . . . would deny counsel for the Defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B)(iv). For all of the reasons stated above, particularly as it relates to the unique foreign language intercepts and associated transcription / translation issues that exist in this case, the exclusion requested in this motion will serve both the United States' and the defendant's interests and ensure that this significant, complicated case is thoroughly prepared for trial by both parties. Not only does the Government need extra time to prepare the multi-language materials for discovery and trial presentation, the suspension of speedy trial time will not be prejudicial to the defendant as it enables his counsel to thoroughly review the evidence, discuss it intelligently with his client, and consider it so as to effectively prepare for plea

negotiations, pre-trial motions, cross-examination of witnesses, or stipulations to the translated materials. Such effective preparation on the part of both parties may also facilitate a disposition short of trial and to the defendant's benefit. To be sure, the defense is within its rights to request independent translations of the multi-lingual materials; however, the government believes it will encounter the same costs, complications, and protracted efforts as the Government has, and is, encountering in obtaining the transcriptions / translations.[2]

**B. <u>Time Under the Speedy Trial Act Should Be Excluded Based Upon the Government's Pending Official Request for Foreign Evidence.</u>**

The Speedy Trial Act states that a period of delay shall be excluded in computing the time within which the trial must commence under the following circumstances:

> any period of delay, not to exceed one year, ordered by a district court upon an application of a party and a finding by a preponderance of the evidence that an official request, as defined in section 3292 of this title, has been made for evidence of any such offense and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

18 U.S.C. § 3161(h)(8). *See also United States v. Serna*, 630 F. Supp. 779, 783-84 (S.D.N.Y. 1986) (finding the government was entitled to continued exclusion of time not to exceed one year under Speedy Trial Act while the government made a diligent and good faith effort to obtain evidence gathered by the Spanish police); *United States v. Strong*, 608 F. Supp. 188, 196-197 (E.D. Pa. 1985) (concluding that a failure to grant an ends of justice delay would deny the

---

[2] In an effort to highlight to defendant Thompson the evidence particularly relevant to him within the voluminous discovery, the Government has offered to meet with the defendant and his counsel to provide them with a preview of the evidence the Government will rely upon if this case were to proceed to trial. Defendant Thompson and his counsel have agreed to participate in such a meeting, and the parties hope to conduct that meeting within the next 30 days.

government needed evidence and time necessary for effective preparation in a complex case that sought evidence from Hong Kong and Singapore).

On December 5, 2013, the Government filed a Mutual Legal Assistance Treaty (MLAT) request with the Government of The Bahamas, requesting evidence related to several judicialized wiretaps conducted by Bahamian law enforcement in 2012. Those wiretaps were conducted during the time of the conspiracy alleged in the indictment and include intercepted conversations of the defendants in this case. As discussed below, the existence of the relevant wiretaps in The Bahamas in this case was only learned by the United States a few weeks before the MLAT request was formally submitted to The Bahamas.

In November 2013, DEA Special Agents in the Nassau, Bahamas, Country Office ("Nassau Country Office"), learned that Bahamian law enforcement had conducted judicialized[3] wiretaps in the Bahamas of telephones used by at least two defendants charged in this case during the period of the conspiracy charged. Prior to November 2013, Bahamian authorities had incorrectly informed the DEA that any wiretaps conducted in the Bahamas on telephones used by the defendants in this case were intelligence-only wiretaps and thus, could not be shared by Bahamian law enforcement with foreign law enforcement for criminal investigative purposes. Upon learning of the existence of the Judicialized wiretaps, Government counsel undertook dual track efforts to obtain copies of the wiretap recordings. First, on November 8, 2013, the day after learning of the existence of the wiretap recordings, Government attorneys prepared and submitted to the Justice Department's Office of International Affairs ("OIA") a draft MLAT

[3] Judicialized wiretaps are lawful, non-intelligence-only wiretaps conducted in criminal investigations in the Bahamas. Recordings from Judicialized wiretaps may be shared with foreign law enforcement pursuant to a Mutual Legal Assistance Treaty ("MLAT") request.

request to the Bahamas, formally requesting copies of the wiretap recordings and related documents. OIA officially transmitted the MLAT request to the Government of The Bahamas on December 5, 2013. Bahamian law enforcement officials are diligently working to compile the information requested, but they have experienced some technical issues regarding the age of the wiretap recordings which have delayed this process. Second, in addition to attempting to obtain the wiretap recordings through formal legal channels pursuant to the MLAT, Government counsel, through the DEA Nassau Country Office, sought to obtain informal, advance copies of the recordings through law enforcement channels. Bahamian law enforcement has advised that it is currently in possession of a number of the wiretap recordings and they are soliciting permission from the Bahamian Ministry of Justice to informally provide copies of those recordings to United States law enforcement in advance of the processing of the formal MLAT request.

The Government's MLAT request satisfies the definition for an "official request" under 18 U.S.C. § 3292(d), in that it is a "request under a treaty or convention, or any other request for evidence made by a court of the United States or an authority of the United States having criminal law enforcement responsibility, to a court or other authority of a foreign country." The MLAT request relates to evidence discovered several months prior to defendant Thompson's and defendant Bencomo's extraditions to the United States. The Government is diligently working with Bahamian law enforcement to expedite the processing of the MLAT request. Accordingly, the government contends that, pursuant to 18 U.S.C. § 3161(h)(8), the time needed for the Bahamas to fulfill the government's formal MAT request, not to exceed one year, should be excluded from the time within which the trial must commence under the Speedy Trial Act. *See*

*Serna*, 630 F. Supp. 779 (S.D.N.Y. 1986); *Strong*, 608 F. Supp. 188 (E.D. Pa. 1985).

### C. The Time Until Co-defendant Knowles Has Been Brought To The United States And Joined For Trial Should Be Excluded Under The Speedy Trial Act.

The Government requests that the time until co-defendant Knowles has been brought to the United States and joined for trial be excluded from the speedy trial clock. The Act states that "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted" shall be excluded in computing the time within which the trial must commence. 18 U.S.C. § 3161(h)(6). That provision has been interpreted by the Supreme Court to mean "all defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant." *Henderson v. United States*, 476 U.S. 321, 323 n. 2 (1986). *See also United States v. Calle*, 120 F.3d 43, 46 (5th Cir. 1997), *cert. denied*, 523 U.S. 1012 (1998) ("in a multi-defendant prosecution . . . the Speedy Trial clock begins to run when the last co-defendant makes his initial appearance in court"); *United States v. Dota*, 33 F.3d 1179, 1183 (9th Cir. 1994), *cert. denied*, 514 U.S. 1052 (1995) (noting that the "established rule" is "that the speedy trial clock begins to tick on the date the last codefendant appears"); *United States v. Davenport*, 935 F.2d 1223, 1229-1230 (11th Cir. 1991) (noting that "the government correctly contends . . . that the speedy trial clock did not begin to run until August 31, 1998, because all of appellant's codefendants had not been apprehended"). In *United States v. Parga-Rivas*, 689 F.Supp. 2d 25, 28 (D.D.C. 2009) (Collyer, J.), the Court noted that the absence of co-defendants qualifies for an exclusion of speedy trial time, because "the desirability of trying the co-defendants together – with its concomitant savings of trial preparation time, witness time, foreign travel, court time, and jurors'

time – made it quite reasonable to await the arrivals of the remaining two defendants [who were pending extradition].” (Citations omitted.) *See also United States v. Varella*, 692 F.2d 1352, 1359 (11th Cir. 1982), *cert. denied*, 464 U.S. 838 (noting Congressional recognition of the “utility of multi-defendant trials” as “the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion was simply the passage of time”).

While *Parga-Rivas* involved defendants already captured and pending extradition from Colombia, other courts have gone even further to suspend the speedy trial time where the government was continuing its attempt to locate a fugitive co-defendant. In *United States v. Tobin*, 840 F.2d 867 (11th Cir. 1988), the Court found, in a drug conspiracy and possession with intent to distribute case, that the exclusion of eight months and ten days based upon an unsuccessful effort to capture a fugitive co-defendant was reasonable. The court reasoned that under the “totality of the circumstances,” the delay was necessary to determine if the goal of a single joint trial could be met and that the defendant was not prejudiced, “particularly in terms of impairing his ability to defend himself.” *Tobin*, 840 F.2d at 869. *See also United States v. Register*, 182 F.3d 820, 827-828 and n. 8 (11th Cir. 1999), *cert. denied*, 531 U.S. 849 (2000) (holding that a 38 month delay, while extraordinary, did not raise speedy trial concerns where the delay had resulted in part from the periodic joinder of defendants, the return of several superseding indictments, the complex nature of the charges and issues involved and the fact that both parties bore some responsibility for the delay). In *United States v. Franklin*, 148 F.3d 451, 454-458 (5th Cir. 1998), the Court found that excluding 134 days while police searched for a fugitive co-defendant was reasonable in order to permit a joint trial of defendants in a drug conspiracy case. The Court stated that “[t]he utility of a joint trial is particularly compelling

here, as the defendants were charged with a single conspiracy so that the government could be expected to recite a single factual history, put on a single array of evidence, and call a single group of witnesses." *Franklin*, 148 F.3d at 457 (internal quotations omitted).

The interests stated above clearly support the exclusion of time under the Speedy Trial Act in this case, until such time as co-defendant Knowles has been brought to the United States to face prosecution and trial with defendants Thompson and Bencomo. All of the defendants were charged at the same time in a single conspiracy, and the government is expected to put on a single array of evidence and call a single group of witnesses (most of them foreign witnesses) to testify about the conspiracy. Thus, the interests of judicial economy strongly weigh in favor of a single trial in this case. Furthermore, the burden of multiple trials here would be enormous given the substantial costs and time-consumption that would undoubtedly result from having to bring numerous law enforcement witnesses from Colombia, Haiti, and the Bahamas and possibly additional foreign countries, as well as from various parts of the United States to the District of Columbia for even a single trial. No less significant, witness safety could be severely compromised if confidential sources who assisted in the investigation are called upon to testify and are forced to do so at multiple trials. Furthermore, due to the limited number of certified Jamaican Patois translators, multiple trials within a short period of time may present scheduling difficulties for the Court and the parties.

Accordingly, the Government respectfully requests at this time that this Court continue to exclude time under the Speedy Trial Act and delay scheduling a trial date in this matter, until such time as co-defendant Knowles is brought to the United States and joined for trial, as defendants Thompson and Bencomo are joined for trial with a co-defendant as to whom the time

for trial has not run and no motion for severance has been granted, pursuant to 18 U.S.C. § 3161(h)(6).

WHEREFORE, for the foregoing reasons, the United States respectfully requests that this Court grant the instant motion and continue to exclude time pursuant to the Speedy Trial Act and delay scheduling a trial date in this matter.

Respectfully submitted this 20th day of May 2014.

ARTHUR WYATT, Chief
Narcotic and Dangerous Drug Section

By: __________/s/_____________________________

Paul Joseph (D.C. Bar # 448495)
Jamie Perry
Trial Attorneys
Narcotic and Dangerous Drug Section
U.S. Department of Justice / Criminal Division
145 N Street, Northeast
Second Floor, East Wing
Washington, DC 20530
Office: (202) 514-9644
Fax: (202) 514-0483
Paul.Joseph2@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of May 2014, I sent via email the foregoing GOVERNMENT'S MOTION TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT to Cary Clennon, Esquire, counsel for the defendant Thompson at clennonlegal@hotmail.com, and to Stephen Brennwald, Esquire, counsel for co-defendant Bencomo at sfbrennwald@cs.com.

_________/s/_____________________________

Paul Joseph (D.C. Bar # 448495)
Trial Attorney
Narcotic and Dangerous Drug Section