## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIM. NO. 1:12-cr-266-02, -03 (RWR) |
| DWIGHT WARREN KNOWLES (2), a.k.a. "Arizona" and | |
| ORAL GEORGE THOMPSON (3), a.k.a. "Chad," | |
| Defendants. | |

## GOVERNMENT'S POSITION ON 404(b) AND MOTION TO INTRODUCE 404(b) EVIDENCE AT TRIAL

The United States of America, by and through counsel, respectfully moves this Court to admit all relevant evidence in this case as direct evidence of the multi-year, multi-member, complex international narcotics trafficking conspiracy as direct evidence of the charged crime which is inextricably intertwined with evidence of the multi-year, multi-member, complex international narcotics trafficking conspiracy. In the alternative, the Government moves this Court to admit all relevant evidence in this case pursuant to Federal Rule of Evidence 404(b).

## I-INTRODUCTION

All of the evidence in this case is both direct evidence of the charged crime and inextricably intertwined with evidence of the multi-year, multi-member, complex international narcotics trafficking conspiracy. Therefore, it is the Governments' primary position that the evidence in this case does not qualify as 404(b) evidence under Federal Rule of Evidence 404(b).

This motion and notice is in no way any admission or stipulation that this evidence is 404(b) evidence.

However, in the alternative, should the Court disagree with the above position, the United States of America, would still respectfully move this Court to admit evidence of other conduct of the Defendants, if applicable, as evidence of the multi-year, multi-member, complex international narcotics trafficking conspiracy pursuant to Federal Rule of Evidence 404(b).   In particular, the Government seeks to admit evidence of similar narcotics trafficking conduct committed by Defendants Thompson and Knowles prior to, and after, the time period of the charged conspiracy of on or about May 2011 through December 12, 2012.   Additionally, the United States also intends to admit evidence of narcotics trafficking conduct involving transportation, not just by means of United States (US)-registered aircraft, but also by means of non-US registered aircraft, boats, and/or other types of transportation in furtherance of the charged conspiracy.

As stated above, the Government's primary position is that all of the Defendants' drug trafficking conduct should be admitted as direct evidence of the charged conspiracy, or evidence that is inextricably intertwined with such evidence.   This holds true whether it is conduct within the time period of the charged conspiracy from on or about May 2011 through December 12, 2012, before or after the time period of the charged conspiracy.   As is discussed in detail below, this also holds true whatever the means of transportation, whether it be US-registered aircraft, non-US registered aircraft, and/or a boat or some other type of transportation.

However, if the Court should determine that this evidence does qualify as 404(b) evidence, it would still be admissible as evidence of the multi-year, multi-member, complex international narcotics trafficking conspiracy pursuant to Federal Rule of Evidence 404(b).

## II-BACKGROUND

Defendants Thompson, also known as "Chad," Dwight Knowles, also known as "Arizona," and three other co-defendants, were indicted in criminal case number 12-cr-266 (RWR) on December 12, 2012, by a federal grand jury in the District of Columbia. The indictment provided that, from in or around May 2011, and continuing thereafter and including December 12, 2012, in the Bahamas, Colombia, Haiti, Venezuela, the Dominican Republic, and elsewhere, Defendants Thompson, Knowles and their co-defendants conspired to distribute, and possess with the intent to distribute, five kilograms or more of cocaine on board an aircraft owned by a United States citizen and registered in the United States, and aiding and abetting, in violation of 21 U.S.C. §§ 959(b), 960 and 963, and 18 U.S.C. § 2.

The Government intends to introduce evidence at trial to prove that, from on or about at least May 2011 to December 12, 2012, Defendants Thompson and Knowles, both based in Santa Marta, Colombia, entered into an agreement with various co-conspirators, to include, but not limited to, pilot Dario Davis and drug-trafficker Trevor Ferguson, both based in Nassau, Bahamas, to transport large quantities of cocaine. Defendant Thompson utilized his contacts in Colombia and Venezuela to include cocaine brokers, investors and sources of supply, as well as members of drug transportation organizations in order to attempt to arrange various cocaine transportation transactions, including the transportation of large quantities of cocaine via boat, aircraft, and shipping containers in furtherance of this conspiracy.

Defendant Knowles used his contacts in Colombia, those contacts introduced to him by Defendant Thompson, as well as his contacts in the United States, the Caribbean, primarily the Bahamas, and elsewhere to identify specific boats, aircraft, and pilots available for this transportation scheme, and to assist Defendant Thompson and others in arranging other cocaine

3

transportation deals. As part of this conspiracy, Defendants Thompson and Knowles worked closely with each other to attempt to utilize various aircraft, including US-registered and non US-registered aircraft, primarily located in the United States, the Bahamas, the Dominican Republic, Panama, and Belize.

Co-defendant Davis, who is Defendant Knowles' nephew, and Co-defendant Ferguson, a close associate of Knowles, were primarily responsible for locating and identifying aircraft and pilots that could be used by Defendants Thompson and Knowles to transport cocaine for, and with, cocaine brokers and sources of supply. Co-defendant Sergio Gonzalez Bencomo, a Barranquilla, Colombia-based cocaine broker, utilized his personal contacts with brokers and sources of supply in Colombia, as well as his connections to Defendant Knowles, and Co-defendants Davis and Ferguson in Nassau (introduced through Defendant Knowles) to arrange for the transportation of cocaine, all in furtherance of this conspiracy.

The Government intends to offer evidence of the above-referenced conduct at trial in the form of witness testimony and through the introduction of telephone recordings, transcripts, email messages, text messages, and other evidence of the Defendants' plans to utilize various aircraft, boats, shipping containers, and other methods to transport large quantities of cocaine.

At this time, the possible trial exhibits (telephone calls, e-mails, texts, and other evidence) that the Government intends to use at trial against the Defendants have been produced to Defendants Thompson and Knowles as discovery. At a reasonable time prior to trial, further information on which witnesses may testify for the Government will be disclosed to Defense. As additional discovery becomes available, it will also be disclosed to Defense. To be clear and to place Defense on notice, all of the disclosed evidence may be used by the Government at trial. Additionally, as a courtesy and at a reasonable time before trial, the Government intends to

provide the Defense with a tentative witness and exhibit list. The Government would request that same courtesy from Defense, and requests reciprocal discovery in this case. This should aid both Defense and the Court for planning purposes, as well as help with an estimation of the length and other details of the trial.

Also, as a note, the Government has been providing to the Defendants copies of draft transcriptions, translations, and summaries of audio recordings of wiretap calls on a rolling basis. Furthermore, with respect to Defendant Thompson, the Government conducted a reverse proffer for the benefit of the Defendant and his counsel, during which Government counsel summarized the scope of the evidence of the charged conspiracy, and described and played to him various telephone calls, email messages, and text messages related to Defendant Thompson and Defendant Knowles' charged conduct. In particular, the Government outlined the various aircraft, boat, and shipping container transactions alleged by the Government as part of the Defendants' conspiracy. As of the date of this motion, the Government has not received any indication that Defense objects to any of the discovery provided. The Government anticipates that any objections, to include any objections based on Rule 404(b), will be filed by Defense at a reasonable time set by the Court and/or prior to trial.

### III-LAW AND ARGUMENT

**The Proposed Trial Evidence is an Intrinsic Part of, and Inextricably Intertwined with, the Charged Conspiracy and is Therefore not 404(b) Evidence or, In the Alternative, it is also Admissible Under 404(b)**

Rule 404(b) of the Federal Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses

pretrial notice on good cause shown, of the general nature of any such evidence it
intends to introduce at trial.

Fed. R. Evid. 404(b) (2011).

Rule 404(b) "excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged,
not evidence that is 'intrinsic' or 'inextricably intertwined.'" *United States v. Allen*, 960 F.2d
1055, 1058 (D.C. Cir.), *cert. denied*, 506 U.S. 881 (1992).  The D.C. Circuit has held that 404(b)
is a rule of "inclusion rather than exclusion" and is "quite permissive, excluding evidence only if
it is offered for the sole purpose of proving that a person's actions conformed to his or her
character." *United States v. Long,* 328 F.3d 655, 660–61 (D.C. Cir.2003); *United States v.
Bowie,* 232 F.3d 923, 929-30 (D.C.Cir.2000).  Further, this Circuit has clarified that Rule 404(b)
"was intended not to define the set of permissible purposes for which bad-acts evidence may be
admitted but rather to define the one impermissible purpose for such evidence." *United States v.
Miller,* 895 F.2d 1431, 1436 (D.C.Cir.1990).

In following the trend of other federal courts[1], in *United States v. Badru,* the D.C. Court
of Appeals held that,

> Evidence of criminal activity other than the charged offense is not considered
> extrinsic if it is an uncharged offense which arose out of the same transaction or
> series of transactions as the charged offense, if it was inextricably intertwined
> with the evidence regarding the charged offense, or it is necessary to complete the
> story of the crime of trial . . .

*United States v. Badru,* 97 F.3d 1471, 1474 (D.C. Ct. App. 1996), cert. denied, 520 U.S. 1150
(1997) (citing *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983)).

---

[1] *See, e.g., United States v. Roberts*, 933 F.2d 517, 519-20 (7th Cir. 1991); *United States v.
Randall*, 887 F.2d 1262. 1268 (5th Cir. 1989); *United States v. Towne*, 870 F.2d 880, 886 (2d
Cir. 1989), *cert. denied*, 490 U.S. 1101 (1989).

Intrinsic evidence is admissible as direct evidence of the crimes charged and not subject to analysis under Federal Rule of Evidence 404(b). Because intrinsic evidence, "by its very nature, does not involve *other* crimes, wrongs or bad acts...there is no concern that it might be used as improper character evidence," *United States v. Lerma-Plata*, 919 F. Supp. 2d 152, 156 (D.D.C. 2013), meaning that Rule 404(b) does not apply.

As a practical matter, "[w]hen evidence is 'inextricably intertwined' with the charged crime [or intrinsic], courts typically treat it as the same crime" and admit such evidence. *Bowie*, 232 F.3d at 928; *see United States v. Sitzmann*, 856 F.Supp.2d 55, 59 (D.D.C. 2012). In considering *Bowie*, the *Lerma-Plata* court noted, "(at least) two types of evidence may be properly considered 'intrinsic,' that is, not subject to Rule 404(b): (1) evidence 'of an act that is part of the charged offense'; and (2) evidence of 'some uncharged acts performed contemporaneously with the charged crime . . . [that] facilitate the commission of the charged crime.'" *Lerma-Plata*, 919 F. Supp. 2d at 156 (quoting *Bowie*, 232 F.3d at 929).

The D.C. Circuit has acknowledged that several forms of 'other crimes' evidence are not considered extrinsic under Rule 404(b). *Badru*, 97 F.3d at 1474. For example, evidence of uncharged crimes may be intrinsic if it "arose out of the same series of transactions as the charged offense . . . or it is necessary to complete the story of the crime on trial." *Weeks*, 716 F.2d at 832; *see also Lerma-Plata*, 919 F. Supp. 2d at 158 (noting that, when the defendant's conversations about the charged crime and the un-charged crime were contemporaneous and often within the same phone calls, it reflected the defendant's own inability to compartmentalize his conversations, demonstrating that the two crimes were inextricably intertwined). Similarly, evidence that the defendant continued to participate in the charged conspiracy is considered intrinsic. *See United States v. Becton*, 601 F.3d 588, 593, 598-99 (D.C. Ct. App. 2010) (allowing

the evidence of the defendant's activities past the time period of the indictment because the evidence was relevant to the existence and/or continuing operation of the charged conspiracy and probative of the defendant's participation in it). Furthermore, if the lack of the proposed evidence would result in an inaccurate or incomplete picture of the defendant's role in the conspiracy, the proposed evidence should be admitted as intrinsic evidence. *Id.; see United States v. Gooch*, 514 F. Supp. 2d 63, 70 (D.D.C. 2007), *aff'd*, 665 F.3d 1318 (D.C. Cir. 2012). Thus, "[a]s long as evidence of the uncharged criminal conduct is offered as direct evidence of a fact in issue and not as circumstantial evidence of the character of the accused, it is admissible independent of its superficial similarity to that which would be considered evidence of 'other crimes' under Rule 404(b)." *United States v. Gray*, 292 F. Supp. 2d 71, 77-78 (D.D.C. 2003) (citing *Badru*, 97 F.3d at 1475 and 22 Charles A. Wright and Kenneth W. Graham, Jr., Federal Practice and Procedure § 5239 at 450 (1978)).

As stated above, to be clear and to provide proper notice, the Government intends to offer evidence at trial in the form of witness testimony and through the introduction of telephone recordings, transcripts, email messages, text messages, and other evidence of the Defendants' cocaine trafficking activities including their plans to utilize US-registered aircraft, non US-registered aircraft, boats, shipping containers, and other methods to acquire and transport large quantities of cocaine.

First, the Government intends to introduce at trial evidence of the Defendants' conspiratorial conduct within the dates of the charged conspiracy (on or about May 2011 through December 12, 2012). The Governments' primary position is that such evidence is both direct evidence of the charged crime and inextricably intertwined with that evidence and that the evidence does not qualify as 404(b) evidence. For example, the Government intends to introduce

at trial a call intercepted in March 2012 over a telephone used by Defendant Bencomo and witness testimony related to that call. In that call, Defendants Knowles and Bencomo discussed, in coded and cryptic terms, various sets of cocaine brokers and sources of supply who needed to transport cocaine. During the call, Bencomo said that he offered to one group an aircraft that he and Knowles had been discussing, but then learned that the group needed a boat instead. In that call, Defendant Bencomo referred to the boat using the coded terms "cloth" and "sail," and Defendant Knowles used the coded term "slow car."

As another example, the Government intends to introduce testimony, calls, text messages, and email messages establishing that, in furtherance of the charged conspiracy, Defendants Thompson and Knowles attempted to locate and secure a 40-foot shipping container bearing container number TCLU5708460 that had been sent from Santa Marta, Colombia aboard a shipping vessel with approximately 42 kilograms of cocaine concealed within. This load of cocaine was eventually seized in California. The cocaine shipment had been sent by associates of Defendants Thompson and Knowles, and Thompson and Knowles were contacted to provide assistance in ensuring that the cocaine shipment arrived at its intended destination. Further, the Government intends to introduce evidence that, in June 2011, an individual known as "Pava" and others contacted Defendant Thompson to negotiate the sale of approximately 10 kilograms of cocaine that Pava's associate had available for sale in Santa Marta, Colombia. With such evidence, a jury can properly infer that Thompson and Knowles were not simply unwitting aircraft brokers in this conspiracy seeking to acquire and provide aircraft to others for unknown reasons but that they were cocaine trafficking experts familiar with cocaine transporters and sources of supply, and their methods of operation. Accordingly, such evidence is intrinsic to the

operation of their drug conspiracy and should be admitted as intrinsic evidence. In the alternative, it would also be admissible under Federal Rule of Evidence 404(b).

Second, the Government also intends to introduce at trial evidence of the Defendants' conduct in relation to the use of US-registered aircraft, non-US registered aircraft, boats, shipping containers, and other methods outside of the dates of the charged conspiracy, i.e., prior to on or about May 2011 and after December 12, 2012. The Governments' primary position is that this is both direct evidence of the charged crime and inextricably intertwined with that evidence and that the evidence does not qualify as 404(b) evidence. For example, the Government will introduce evidence that between on or about January 2013 and on or about April 2013, after the dates of the charged conspiracy in this case, Defendants Thompson and Knowles, an associate known as Gabriel, and others negotiated with sets of narcotics-traffickers to acquire and use various US-registered aircraft to transport large quantities of cocaine. These negotiations are a continuation of the same conspiracy charged in this case. One of the aircraft sought to be used by Defendants Thompson and Knowles during 2013 was a United States-registered Westwind aircraft located in Maracaibo, Venezuela at that time and bearing registration tail number N599DP. Defendants Thompson and Knowles and others negotiated with drug-traffickers to transport up to 2,500 kilograms of cocaine on the N599DP aircraft. Although this conduct of the Defendants occurred after the conspiracy period identified in the indictment, as it constitutes evidence intrinsic to the indicted conspiracy offense, it need not be analyzed pursuant to Federal Rule of Criminal Procedure 404(b). In the alternative, it would also be admissible under Federal Rule of Evidence 404(b).

To further illustrate the Governments' primary position, many of the telephone recordings, transcripts, email messages, text messages, and other evidence to be introduced at

trial reveal the use of multiple types of transportation within the same telephone recordings, transcripts, email messages, text messages, and other evidence.  For example, a single telephone call may discuss plans to utilize US-registered aircraft, non-US registered aircraft, and boats all within the same telephone call or series of calls.  This was an ongoing multi-year, multi-member, complex international narcotics trafficking conspiracy.   The dates and the means of transportation may have changed from call-to-call or day-to-day in furtherance of the conspiracy, but the goal of acquiring and transporting large of amounts of cocaine to market remained the same.  Therefore, the Governments' primary position is that all evidence in this case is both direct evidence of the charged crime and inextricably intertwined with that evidence, rather than prior crimes, wrongs, or other acts.  As a consequence, the referenced trial evidence is not 404(b) evidence.

In the alternative, the above evidence is also permissible Rule 404(b) evidence of other crimes.  If the Court should determine that the above evidence is 404(b) evidence, the proposed 404(b) evidence clearly demonstrates that the Defendants had a common scheme or plan, illustrates their Modus Operandi, and demonstrates their knowledge of, and intent to participate in, the conspiracy. Lastly, the Government's proposed evidence is not unduly prejudicial.

## IV-CONCLUSION

For the foregoing reasons, in accordance with the governing and long-standing practice in this jurisdiction, the Government respectfully moves that the Court find that all the proposed trial evidence in this case is inextricably intertwined with the charged conspiracy and is therefore not 404(b) evidence.  First, this would include any and all evidence to include, but not limited to witness testimony, the introduction of telephone recordings and transcripts, email messages, text messages, and/or any other type of evidence of the Defendants' plans to utilize various boats,

aircraft, and shipping containers to transport large quantities of cocaine. Second, this would include all evidence in this case to include evidence during, before, and after the dates of the charged conspiracy in this case. Third, this would include all evidence of the various means of the transportation of the cocaine in this case to include, but not limited to, US-registered aircraft, non-US registered aircraft, and/or a boat or some other type of transportation.

In the alternative, if Court disagrees and finds that the evidence does qualify as 404(b) evidence, the Government would move for admission of the aforementioned evidence consistent with Federal Rules of Evidence 404(b).

Respectfully submitted this 15th day of January 2015.

> Arthur Wyatt, Chief
> Narcotic and Dangerous Drug Section
> Criminal Division
> U.S. Department of Justice
> Washington, DC 20530

By: _____

> Paul Joseph
> Trial Attorney
> Narcotic and Dangerous Drug Section
> Criminal Division
> U.S. Department of Justice
> Washington, DC 20530
> 202-514-9644
> Paul.Joseph2@usdoj.gov

and

By: _____

> Brian Sardelli
> Trial Attorney
> Narcotic and Dangerous Drug Section
> Criminal Division
> U.S. Department of Justice
> Washington, DC 20530
> 202-598-2950
> Brian.Sardelli2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via the CM/ECF system, to counsel of record for the defendants, this 15th day of January 2015.

Arthur Wyatt, Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
Washington, DC 20530

By: _____

Paul Joseph
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
Washington, DC 20530
202-514-9644
Paul.Joseph2@usdoj.gov

and

By: _____

Brian Sardelli
Trial Attorney
Narcotic and Dangerous Drug Section
U.S. Department of Justice / Criminal Division
Washington, DC 20530
202-598-2950
Brian.Sardelli2@usdoj.gov