**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | |
| | **CRIM. NO. 1:12-cr-266-02, -03 (ABJ)** |
| **DWIGHT WARREN KNOWLES (2),** a.k.a. "Arizona" and | |
| **ORAL GEORGE THOMPSON (3),** a.k.a. "Chad,"  | |
| **Defendants.** | |

**GOVERNMENT'S MOTION TO MODIFY THE PROTECTIVE ORDER AND OPPOSITION TO DEFENDANTS' MOTION IN LIMINE REGARDING WITNESS JOSE HEREDIA PRADO**

The United States of America, by and through its attorneys with the United States Department of Justice, Narcotic and Dangerous Drug Section, respectfully requests this Court to:

(1) Modify the Protective Order to prohibit the defendants from possessing sensitive discovery materials, including *Jencks* and *Giglio* materials for expected witnesses, outside the presence of the defense team; and

(2) Deny the defendants' Motion in Limine (ECF No. 162) as premature.

**I.      The Court Should Modify the Protective Order to Prevent the Defendants From Possessing Sensitive Discovery Materials Outside the Presence of the Defense Team**

First, the defendants have jointly moved to clarify the Protective Order in this case in order to allow the defendants to possess *Jencks* and *Giglio* materials in the facilities where they are located, outside the presence of the defense team.    ECF No. 167.    The defendants are essentially

1

asking for unfettered access to sensitive discovery materials—such as reports and notes of statements made by expected witnesses, personal information regarding those witnesses, and impeachment information regarding those witnesses—regardless of whether a member of the defense team is present.   This request should be denied.

A.      **Background**

The Protective Order first entered in this matter on May 20, 2015, provided that "[a]ny copies of wiretap recordings, email messages, text messages, photographs, law enforcement reports and the Government's trial exhibit list made by defense counsel for review with defendants shall be returned by defendants and therefore remain in the custody and control of defense counsel or the defense team at all times[.]"   ECF No. 75 at 1.   The Protective Order further provided that the protected discovery could only be disclosed to the defendants or the defense team if such disclosure was reasonably necessary to advance the preparation of the case, and the recipient of the disclosure was provided with a copy of the protective order and agreed to abide by its terms. ECF No. 75 at 1-2.   The Protective Order also required defense counsel to review the Protective Order with the defendants and defense team and confirm that they understood the Order's terms and consequences.   ECF No. 75 at 2.

On February 13, 2016, the Government agreed to a Modified Protective Order that permitted the defendants to possess a copy of the Government's trial exhibit list without the limitations of the Protective Order.   ECF No. 121.   The Modified Protective Order was signed on February 16, 2016, and was entered on the docket on March 8 and 10, 2016.   ECF No. 124, 125.

On July 19, 2016, the Government again agreed to modify the Protective Order, this time

to permit the defendants to retain custody of items 18-235 on the Government's trial exhibit list, which consist of transcripts of phone calls, emails, and text messages.   ECF No. 152.   The corresponding Order modifying the Protective Order was entered on July 20, 2016.   ECF No. 155.

On August 17, 2016, the defendants filed their Motion for Clarification of the Protective Order, in which they contend that the Government's *Jencks* and *Giglio* disclosures are not "discovery" subject to the Protective Order, and in which they request that they be allowed to retain *Jencks* and *Giglio* materials outside the presence of the defense team.   ECF No. 167.   That same day, the Court entered a minute order concluding that *Jencks* and *Giglio* materials produced by the Government are "discovery," albeit discovery that was not included within the Protective Order, and granted the Government leave to file a motion modifying or extending the scope of the Protective Order to encompass *Jencks* and *Giglio* material.   In response to the Court's minute order, the Government files the instant Motion.

**B.     Argument**

The Government has already consented twice to modify the Protective Order in this case to allow the defendants to retain the Government's exhibit list and numerous transcripts of calls, emails, and text messages, in order for the defendants to effectively prepare for trial.   Now, however, the defendants are requesting something quite different.   They are asking that they be allowed to possess, in the facilities where they are located and outside the presence of the defense team, the *Jencks* and *Giglio* material that the Government has provided to defense counsel.   To permit the defendants to retain these sensitive materials raises serious concerns of witness security, obstruction of justice, and exposure of sensitive law enforcement information.   The Government

requests that the Court modify the Protective Order to prohibit disclosure of the *Jencks* and *Giglio*

materials in the manner requested by the defendants.

This Circuit has recognized that the danger to cooperating witnesses and informants in

cocaine distribution cases is not an abstraction, but a concrete risk that threatens the due

administration of justice.   In *Mays v. Drug Enforcement Administration*, 234 F.3d 1324 (D.C.

Cir. 2000), then-Judge Ginsburg discussed the violent nature of the cocaine trafficking industry:

> This court knows all too well the violence and danger that accompany the cocaine trade. Indeed, for the same reasons that an informant would justifiably fear reprisal from a murderous street gang and expect the authorities to keep his information confidential, *so too would an informant reasonably fear reprisal by conspirators to distribute cocaine; the two types of criminal enterprises are closely comparable in terms of their organization and their penchant for violence.* See U.S. SENTENCING COMMISSION, SPECIAL REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY 4 (1997) (trafficking in crack cocaine closely associated with " systemic crime ... particularly the type of violent street crime so often connected with gangs, guns, serious injury, and death"); U.S. SENTENCING COMMISSION, SPECIAL REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY 95-98 (1995) (chronicles empirics of violent crime, including " elimination of informers," that attends trafficking in crack and powder cocaine).

> Indeed, our notion of what is reasonable police conduct has long reflected the heightened danger and risk of violence posed by cocaine trafficking. Surely we must extend the same consideration to informants when they help a law enforcement agency combat this type of crime. *To expose them to the real potential of retaliation at the hands of cocaine traffickers would be not only incongruous but also perverse.*

> [Appellant] protests that the presumption urged by the Government is too broad, that it would cloak in confidentiality anything anyone ever tells a law enforcement officer about any drug crime. Not so: *We speak here only of those informants who supply intelligence relating to the crime of conspiracy to distribute cocaine; the accumulated evidence and experience of this court bear most forcefully upon that specific offense.*

*Mays v. Drug Enforcement Administration*, 234 F.3d at 1329-1330 (internal citations omitted)

(emphasis added). Courts in this Circuit have likewise issued protective orders in light of the

4

violent nature of Colombian drug trafficking organizations.    *See, e.g., United States v. Celis*, 608 F.3d 818, 825 (D.C. Cir. 2010) ("The events underlying these convictions occurred principally in Colombia, South America. Because appellants' actions were tied to a terrorizing drug trafficking organization in Colombia, the district court issued a protective order to ensure the safety of certain government witnesses.").    Similarly, courts have limited defendants' access to information about witnesses due to security concerns. *See, e.g., United States v. Martinez*, 764 F. Supp. 2d 166, 169 (D.D.C. 2011) (recognizing that "[s]afety of witnesses is, of course, an important public interest" and noting the "danger in the violent drug community").

In this case, the defendants are charged with being members of a complex international narcotics trafficking conspiracy based in Colombia.   The Government intends to introduce evidence at trial to prove that, from on or about at least May 2011 to December 12, 2012, defendants Thompson and Knowles, both based in Santa Marta, Colombia, entered into an agreement with various co-conspirators to transport large quantities of cocaine onboard U.S. owned or registered aircraft.    Defendant Thompson used his contacts in Colombia and Venezuela to include cocaine brokers, investors, and sources of supply, in furtherance of the conspiracy. Defendant Knowles used his contact in Colombia, as well as contacts in the United States, the Caribbean, and elsewhere, to identify specific aircraft and pilots available for this transportation scheme.   The Government expects that the witnesses will testify not only about the defendants' conduct, but about the Colombian cocaine brokers, sources of supply, and investors with whom the defendants conspired.   The Government also expects that witnesses may testify about their own drug trafficking experiences independent of the defendants, which would likely include testimony regarding other significant drug trafficking organizations in Colombia, Venezuela, and

elsewhere.

The *Jencks* and *Giglio* materials disclosed by the Government include numerous reports and notes of witnesses' statements regarding the topics discussed above.   These materials could easily be used to identify cooperating witnesses to pressure them into not testifying or harm them due to their cooperation.   Similarly, the *Jencks* and *Giglio* materials contain witnesses' personal information, including places and dates of birth, familial relationships, and personal background that, in the wrong hands, could compromise the safety and security of witnesses or their families. At the end of the day, it is the witnesses who will have to return to their lives after this trial, whether in prison or in their native countries.   Several witnesses have already expressed concerns to the Government about their safety in light of their expected testimony.   Given the "heightened danger and risk of violence posed by cocaine trafficking," *Mays*, 234 F.3d at 1330, this Court should not permit *Jencks* and *Giglio* materials to be released without any method for the Government or the Court to effectively control their dissemination.[1]

The Government is aware of the defendants' need to effectively prepare for trial, as it was for this very reason that the Government twice consented to modifying the Protective Order.   This need must be balanced against the right of witnesses to their own safety and security, and the right of the parties to a fair trial. The Government believes its proposed modifications to the Protective Order, attached hereto as Exhibit A, strike the right balance by including the *Jencks* and *Giglio* material as discovery that may be reviewed by the defendants in the presence of a member of the defense team.   Defense counsel need not be present for this review, so long as a member of the

---

[1]      Even if the Court were to allow the *Jencks* and *Giglio* materials to be retained by the defendants subject to the condition that the defendants not disclose or disseminate the information contained in those materials, such a condition would fail to adequately ensure witness safety.

defense team is present.    However, these materials should not be retained by the defendants, and the defendants should not disclose the substance of the *Jencks* or *Giglio* materials to any other person.

For these reasons, the Government respectfully requests that the Court grant the instant Motion and enter the proposed modified Protective Order.

## II.   The Court Should Deny The Defendants' Motion in Limine As Premature

The Government also opposes the defendants' Motion in Limine regarding expected witness Jose Heredia Prado as premature.    The Government expects that much of Prado's expected testimony will not implicate his Fifth Amendment privilege, and that in any event Prado's testimony is required by his plea agreement.    The Government also opposes the defendants' attempts to exclude admissible statements by coconspirators and party opponents.

First, when a witness refuses to testify based on his Fifth Amendment privilege, "the trial judge must make an appropriate inquiry into the basis of the privilege claimed by the witness, and may not permit the witness to refuse to testify where a narrower privilege will adequately protect him."    *United States v. Reese*, 561 F.2d 894, 900 (D.C. Cir. 1977).    "When the witness refuses to answer a particular question, the trial judge has a duty to determine whether a narrower privilege would suffice to protect the witness from danger while permitting the [questioning party] to elicit desired testimony.    Usually, a trial court cannot speculate whether all relevant questions would or would not tend to incriminate the witness; accordingly, the court normally requires the privilege to be asserted in response to specific questions."    *United States v. Thornton*, 733 F.2d 121, 125-26 (D.C. Cir. 1984) (citations omitted). In the present case, the Government expects that much of Prado's testimony will not implicate his Fifth Amendment rights.    For example, Prado will likely

testify regarding the circumstances of his case in the Eastern District of Virginia, for which he cannot be prosecuted again under principles of double jeopardy.   Additionally, the Government expects that Prado may testify regarding a cocaine transaction with defendant Thompson in 2011. Because prosecution for this transaction is likely barred by the statute of limitations, *see* 18 U.S.C. § 3282, and because the Government is unaware of any connection between this transaction and the United States, Prado's testimony about this event would likely not tend to incriminate him. Additionally, to the extent that Prado may fear prosecution by a foreign country as a result of his testimony, such concerns do not trigger the protections of the Fifth Amendment.   *United States v. Balsys*, 524 U.S. 666, 699-70 (1998).   Nonetheless, the Government is cognizant of Prado's Fifth Amendment rights, and does not object to the Court making "an appropriate inquiry into the basis of the privilege claimed by the witness."   *Reese*, 561 F.2d at 900.   The Government does note, however, that Prado's testimony is required by his plea agreement with the Eastern District of Virginia.

Second, the defendants seek to exclude admissible co-conspirator statements and statements made by party opponents as hearsay.   The Government expects that these statements will be introduced in two contexts: (1) in the context of a cocaine transaction involving Prado and defendant Thompson, and (2) in the context of an agreement between Prado, an individual known as Omero, and others to locate a source of cocaine and funding for a plane that was to be provided by defendant Knowles.   It is well recognized that any statement by a party opponent, namely Knowles or Thompson, is not hearsay and should be admitted.   Fed. R. Evid. 801(d)(2)(A).   A statement made by a coconspirator during and in furtherance of a conspiracy is likewise not hearsay.   Fed. R. Evid. 801(d)(2)(E).   Before admitting a co-conspirator's statement, the court

must find by a preponderance of the evidence that there was a conspiracy between the declarant and nonoffering party, and that the statement was made during the course and in furtherance of the conspiracy.   *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  Although independent evidence of the conspiracy is required, such evidence may be direct or circumstantial and may be inferred from "a development and a collocation of circumstances."   *United States v. Jackson*, 627 F.2d 1198, 1217 (D.C. Cir. 1980).

Here, the Government expects that many of the statements at issue will be either admissible statements made by Thompson or Knowles themselves, or statements made by co-conspirators in the two contexts described above.   Contrary to defendants' contentions, there are numerous independent indicia of the conspiracies to which the statements relate, including intercepted phone calls, the circumstances in which the statements were made, and testimony of witness regarding actions taken by themselves and others in response to the statements in order to further the conspiracies.   Because Prado's deposition will occur before trial, there will be ample opportunity for the Court to vet the statements at issue prior to when the deposition will be presented to the jury.   As such, the defendants' efforts to exclude the statements are premature.

Respectfully submitted this 19th day of August, 2016.

ARTHUR G. WYATT, Chief
Narcotic and Dangerous Drug Section
U.S. Department of Justice
Washington, D.C. 20530


_____*/s/*_____

Brian Sardelli
Adrian Rosales

9

Erin Cox
Trial Attorneys
Narcotic and Dangerous Drug Section
U.S. Department of Justice
145 N Street, Northeast
East Wing, Second Floor
Washington, D.C. 20530


<u>CERTIFICATE OF SERVICE</u>


I hereby certify that on the 19th day of August, I filed this document via ECF and therefore caused a copy to be served on the defense counsel of record in this case.

ARTHUR G. WYATT, Chief
Narcotic and Dangerous Drug Section
U.S. Department of Justice
Washington, D.C. 20530


_____*/s/*_____

Brian Sardelli
Adrian Rosales
Erin Cox
Trial Attorneys
Narcotic and Dangerous Drug Section
U.S. Department of Justice
145 N Street, Northeast
East Wing, Second Floor
Washington, D.C. 20530